Donald W. WADE, Appellant,

v.

JACKSON COUNTY, Texas, Appellee.

No. 1149.

Court of Civil Appeals of Texas,
Corpus Christi.

Feb. 17, 1977.

Rehearing Denied March 10, 1977.

O. F. Jones, Victoria, Larkin T. Thedford, Edna, for appellant.

Tom Garner, Jr., Port Lavaca, for appellee.

## OPINION

BISSETT, Justice.

This is a suit for damages allegedly caused by the impoundment of water on plaintiff's land. Donald W. Wade, plaintiff, instituted suit against Jackson County, Texas, and E. T. Rose, Jr., Trustee, defendants to recover damages to his land which he claimed he had suffered because of the failure of the defendant Jackson County to maintain a public road that provided proper drainage to his land, and because of the construction of a levee built by the defendant Rose upon his own land that impeded the natural flow of water across plaintiff's land. A non-suit was taken as to the defendant E. T. Rose, Jr., Trustee, on March 29, 1976. Summary judgment was rendered in favor of the defendant Jackson County, Texas, (County) on May 27, 1976. Plaintiff (Wade) has appealed.

Wade, in his second amended original petition, the pleading last filed by him prior to the hearing on the motion for summary judgment, alleged: 1) he is the owner of a tract of land in Jackson County, Texas, consisting of 192.5793 acres; 2) he purchased the land on March 6, 1971; 3) the land is north of a public road known as "Country Club Road"; 4) the County for at least fifteen years prior to the filing of the suit, maintained the road, and from time to time increased the surface elevation of the road, which impeded the natural flow of water across his land and flooded his land; 5) work was last done on the road "in November or December, 1970", when the County "laid an asphalt topping upon the surface of the road which raised the surface of the road several inches in height"; 6) shortly thereafter, "a large rainfall occurred" and his land was flooded; 7) on September 25, 1973, he presented his claim for damages to the Commissioners' Court of the County; 8) the claim was denied.

Wade contends that the County, "under the provisions of Article 6730", has a "mandatory obligation and duty to alleviate flooding upon a public road by the cutting of sufficient ditches to allow the water to runoff". He claims that he is entitled to a recovery of money damages, because: 1) the failure of the County to remedy the situation, "in accordance with and in obedience to such statute, is negligence per se, and is, as a matter of law, the proximate cause of damages to the plaintiff's land"; or, 2) the failure by the County "to correct this problem by any action on its part" constitutes the creation and maintenance of a nuisance by the defendant, that resulted in permanent damage, or in the alternative, temporary damage to his land.

Wade relies entirely upon the provisions of Tex.Rev.Civ.Stat.Ann. art. 6730 (1960). The statute reads:

"The earth necessary to construct a causeway shall be taken from both sides, so as to make a drain on each side thereof. Whenever it is necessary to drain the water from any public road, the overseer shall cut a ditch for that purpose, having

due regard for the natural water flow, and with as little injury as possible to the adjacent land owners. In such cases the commissioners court shall cause the damages to such premises to be assessed and paid out of the general revenues of the county, and in case of disagreement the same may be settled by suit as in other cases."

Wade first seeks to impose liability upon the County for negligence in failing "to alleviate flooding upon public roads" by the cutting of sufficient ditches and the installing of culverts in Country Club Road so as to allow the surface water on his land to "run under the road, rather than being dammed up by it". He contends that the failure of the County to remedy the situation is a violation of the statute, which constitutes "negligence per se" and that such negligence renders the County liable to him in damages.

■ It has long been a well settled rule of law in this State that a county is not liable for injuries resulting from the negligence of its officials, officers, agents, servants or employees, and no recovery in damages can be had against a county unless liability be created by statute. *Harris County v. Gerhart,* 115 Tex. 449, 283 S.W. 139 (1926); *Nussbaum v. Bell County,* 97 Tex. 86, 76 S.W. 430 (1903); *Heigel v. Wichita County,* 84 Tex. 392, 19 S.W. 562 (1892); *Hamilton County v. Garrett,* 62 Tex. 602 (1884). Article 6730 does not impose liability on the part of a county because of the negligent failure of its officials, officers, agents, servants and employees to install and maintain proper drainage facilities in connection with the construction, operation and maintenance of a public road. Wade is, therefore, precluded as a matter of law, from a recovery of money damages against the County on his theory of negligence.

■ Wade also seeks a recovery on the theory that the road has damaged his land in that "whenever a sufficient amount of rain falls . . . such water remains standing upon his land for a considerable length of time." While it is settled law in this State, in the absence of a constitutional or statutory provision therefor, a county is not liable for the torts of its officials, officers, agents, servants or employees, it, being an arm of the State, has the legal right to take, damage or destroy private property for a public use, subject, of course, to the right of the owner thereof to adequate compensation for the damaging, taking or destruction thereof. *State v. Hale,* 136 Tex. 29, 146 S.W.2d 731 (1941); *Soule v. Galveston County,* 246 S.W.2d 491 (Tex.Civ.App.— Galveston 1952, writ ref'd). Wade, in his alternate theory on which he predicated his cause of action, sued for the "damaging" of his land without adequate compensation.

■ Under the provisions of Article 6730, our appellate courts have held without exception that where the construction or maintenance of a public road by a county causes property damage to land adjacent to the road the Commissioners' Court of the County is required to assess and pay such damages to the adjacent landowner, and failure to do so is grounds for a suit for monetary damages against the County "as in other cases". *Jones County v. Moore,* 4 S.W.2d 289 (Tex.Civ.App.—Eastland, 1928, writ ref'd). This is such a case where the petition sufficiently states a cause of action against the County under Article 6730 for the alleged damaging of land. The County, however, contends that Wade's cause of action, if any he had, was barred by the two year statute of limitation, and by laches.

Tex.Rev.Civ.Stat.Ann., art. 1573 (1962) provides:

"No county shall be sued unless the claim upon which such suit is founded shall have first been presented to the commissioners court for allowance, and such court shall have neglected or refused to audit and allow the same, or any part thereof."

This statute is applicable to claims like the one upon which this suit is based. *Jones County v. Moore,* supra.

■ With respect to limitations in an action for the damaging of property by a county, under the general rule, limitations begins to run when the cause of action

accrues, and by "cause of action" is meant the right to institute suit. *Jones County v. Moore,* supra. The right to institute suit against a county of money damages does not accrue until the claim has been rejected by the commissioners' court. *City of Taylor v. Hodges,* 143 Tex. 441, 186 S.W.2d 61 (1945); *Jones County v. Moore,* supra.

■ However, the claim for such damages may be barred by the two year statute of limitation where suit is not filed to recover the damages within two years from the date the cause of action accrued. *Jones County v. Moore,* supra; *Tarrant County Water Control & Improvement District Number One v. Reid,* 203 S.W.2d 290 (Tex. Civ.App.—Fort Worth 1947, writ ref'd, n. r. e.); cited by both the majority and the dissenting opinions in *Brazos River Authority v. City of Graham,* 163 Tex. 167, 354 S.W.2d 99 (1962).

The general rule that the claimant's cause of action does not accrue so as to start the running of the statute of limitations unless all facts exist and are alleged that show the existence of a complete cause of action is subject to an exception. It (the exception) is stated in 51 Am.Jur.2d, Limitation of Actions, § 111, as follows:

". . . if the only act necessary to perfect the plaintiff's cause of action is one to be performed by the plaintiff, and he is under no restraint or disability in the performance of such act, he cannot indefinitely suspend the statute of limitations by delaying performance of that act. Thus, when a cause of action has accrued but the owner of the cause of action, in order to maintain suit upon it, is required to take some preliminary antecedent step, such as the service of notice upon the person against whom the cause of action exists, he is not permitted to suspend indefinitely the operation of the statute of limitations by a failure to act or by long and unnecessary delay in taking the antecedent step. Thus, as a general principle, it is not the policy of the law to permit a party against whom the statute runs to defeat its operation by neglecting to do an act which devolves upon him in order to perfect his remedy against another. If this were so, a party would have it in his own power to defeat the purpose of the statute in all cases of this character."

The above-stated general propositions have clear support in the following Texas cases: *Port Arthur Rice Milling Co. v. Beaumont Rice Mills,* 105 Tex. 514, 143 S.W. 926, 148 S.W. 283, 150 S.W. 884, 152 S.W. 629 (1912); *Jackson v. Tom Green County,* 208 S.W.2d 115 (Tex.Civ.App.—Austin, 1948, writ ref'd n. r. e.); *Federal Crude Oil Co. v. Yount-Lee Oil Co.,* 73 S.W.2d 969 (Tex.Civ.App.— Beaumont 1934, writ dism'd), cert. den. 295 U.S. 741, 55 S.Ct. 655, 79 L.Ed. 1687; *Smith v. Wise County,* 187 S.W. 705 (Tex.Civ.App. —Fort Worth 1916, writ ref'd).

Both Wade and the County filed motions for summary judgment. Both motions were properly before the trial court at the time judgment was rendered which denied Wade's motion and granted that of the County. Consequently, the evidence accompanying Wade's motion was evidence to be considered by the Court in deciding the County's motion. *DeBord v. Muller,* 446 S.W.2d 299 (Tex.Sup.1969).

The depositions are detailed and lengthy. We summarize only the summary judgment evidence that relates to the disposition of this appeal. There is no dispute with respect to any material fact, although there is disagreement between the parties as to the legal effect of some of the undisputed facts.

Country Club Road is a public road and was in existence in 1921. It was a dirt road at that time. It was first improved in the 1950's when it was gravelled; bar ditches were built on each side and a twelve-inch pipe was installed therein in order to drain adjacent land. The road was again gravelled in 1960, when it was widened. It was paved in 1968 or 1969, and it was "topped" by the application of a coat of premix in the early part of 1971. The "topping" was completed before the 192 acre tract was acquired by Wade. All of the work done on the road at the various times subsequent to the time it was first improved in the 1950's had the effect of rais-

ing the elevation of the road. No additional pipes, culverts or drains were put in or under the road after the above-mentioned twelve-inch pipe was installed. The road dams up water on the land owned by Wade, and the raising of the road level to its present height has impeded the natural flow of water across the 192 acre tract. A small rain in dry times does not cause any damage to the land. A six inch rain will drain off of the land in two or three days and may or may not damage the land, depending on whether the land is dry or wet at the time of the rain. A fifteen inch rain will damage the land and will cause water to stand on a substantial portion of the Wade tract for four or five days.

Wade bought the land which he contends has been damaged by Country Club Road "trapping water on my land" on March 6, 1971. The elevation of the road has not been increased since sometime prior to March 6, 1971. Wade has been personally familiar with the road and the 192 acre tract "since about 1968". In April, 1971, a fifteen inch rain fell in the area and inundated the land. Wade presented a written claim with the Commissioners' Court of the County for damages in the total sum of $140,000.00 on August 27, 1973. The amount of damages requested was increased to $190,000.00 on September 25, 1973, when Wade presented another written claim to the Commissioners' Court. The County rejected both claims.

Wade filed this suit on October 3, 1973, which was more than two years after he became aware of the fact that the road, following a large rain, caused his land to be damaged by the impoundment of rain water thereon, but was less than two years from the time that his claim was rejected by the Commissioners' Court of the County. More than two years elapsed between the date when Wade learned that the road caused damage after a big rain (April, 1971) and the date when he first presented a claim for damages to the Commissioners' Court (August 27, 1973).

We consider *Jackson v. Tom Green County*, 208 S.W.2d 115 (Tex.Civ.App.—Austin 1948, writ ref'd n. r. e.), to be in point. There, the claim was for money allegedly due for a deficiency in monthly salary due a justice of the peace for the period January 1, 1936 to July 28, 1945. The claim was presented to the Commissioners' Court for allowance on March 5, 1947. It was rejected on March 15, 1947. The trial judge rendered judgment for the claimant on the sums of money that became due *after* March 1, 1945, but denied a recovery of all sums of money which became due and payable by Tom Green County prior to that date. The judgment rendered by the trial court was affirmed on the theory that laches prevented a recovery of all claims which were not presented to the Commissioners' Court for payment within two years after they should have been paid. The court said:

> "If the claim here can be one requiring presentation under Art. 1573, there is no question but that the right (and we think the consequent duty) to present it arose each month when the county paid less than was due. In applying the doctrine of laches the limitation period is frequently applied by analogy. Under this rule the right to present the claim would be barred in two years after that right accrued; . . . ."

The defense of laches with respect to presenting the claim to the commissioners' court was not discussed in *Jones County v. Moore,* supra. The Supreme Court, however, in *City of Taylor v. Hodges,* 143 Tex. 441, 186 S.W.2d 61 (1945), in which it reaffirmed the rule announced in the *Jones County* case to the effect that limitations began to run from the date that the claim was rejected by the Commissioners' Court, said:

> ". . . No question of laches in filing the claim is presented."

In the instant case, the question of laches is presented. There is no valid reason why this Court should not apply the rule set out in 51 Am.Jur.2d, Limitations of Action, § 111, hereinabove quoted, which was applied by the Austin Court of Civil Appeals in *Jackson v. Tom Green,* supra. The rule

is sound, which we believe was expressly recognized by our Supreme Court in *City of Taylor v. Hodges,* supra.

Wade, in his deposition, stated that he had been personally familiar with Country Club Road and the 192 acre tract since "about 1968". If he had not been aware that the road impeded the natural flow of water across the land on March 6, 1971, when he bought the same, he was certainly apprised of that fact in April, 1971. We incorporate the following portions of his deposition, to-wit:

"Q When did you build the little paved road running north to south to divide the subdivision?

A Somewhere around April, I believe, of '71.

Q April. Right after you bought the property?

A Right. That's what I bought the property for, to develop it.

Q And you built and paved the road immediately after you bought it?

A Right. That's when I discovered it didn't drain.

\* \* \* \* \* \*

Q Do you remember the first occasion that the water backed up on your land after you bought it?

A Yes, sir. Right after we built that road I think we got somewhere around fifteen inches of rain. And that was around April of '71."

Under the record here presented, it is conclusively established that Wade became aware of the fact that Country Club Road, because of improper drainage facilities in the road, was causing damage to the 192 acre tract as early as April, 1971. He had a right at that time to demand compensation for the "damaging", and, if he intended to ask for such compensation, he had the duty to present such claim to the Commissioners' Court for allowance within two years from and after April, 1971. Since he did not present such a claim until August 27, 1973, his right to present such claim was barred by the two year statute of limitation. *Jackson v. Tom Green County,* supra.

The record affirmatively shows that summary judgment in favor of the County was warranted as a matter of law. We have carefully considered all of Wade's points of error. They are all overruled.

The judgment of the trial court is AFFIRMED.